WM. TRULLINGER ET AL. v. SARAH E. CHARLES.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON
PLEAS OF DAUPHIN COUNTY, IN EQUITY.

Argued June 4, 1889—Decided June 28, 1889.

1. An assignment of error alleging that "the court erred in sustaining the report of the master upon the facts of the case, his finding being against the weight of the evidence," is objectionable not only because too general, but because it admits there was a conflict of evidence, a matter for the determination of the master and court below.

2. How far a married woman, who joins with her husband in a conveyance of her husband's lands, may thereby affect the lien of a judgment held by her against her husband, will not be examined when it is not made to appear what covenants were contained in the deed in the execution of which she was a party.

(a) Jacob Charles and wife conveyed land to their son, J. D. C. The wife of J. D. C. entered a judgment against her husband, and subsequently J. D. C. and wife reconveyed the land to the wife of Jacob C. Thereafter Jacob C. and wife conveyed the land to Trullinger, by deed of general warranty, assuring the latter that the judgment was not a lien on the land.

3. The master having found, and his finding having been approved by the court below, that the conveyance to J. D. C. was absolute, and that there was no fraud, actual or legal, on the part of the wife of J. D. C., in entering her judgment and issuing process for its enforcement, it was not error to dismiss a bill filed by Trullinger and his grantors, to enjoin a sale of the land under such process.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 16 May Term 1889, Sup. Ct.; court below, No. 104 Equity D., C. P.

A bill in equity was filed in the court below, which as amended was by William Trullinger, Jacob Charles and Mary E., his wife, against Sarah E. Charles, praying upon the facts therein averred that said defendant be enjoined from proceeding against the land of said William Trullinger on a writ of venditioni exponas issued, and perpetually restrained from proceeding against said land upon any process whatsoever, upon

a certain judgment in favor of Sarah E. Charles against her husband John D. Charles.

An answer having been filed, issue was joined, and the cause referred to *Mr. Elias Hollinger*, as examiner and master, who made a report the material parts of which were as follows :

The first, second and third paragraphs of the plaintiff's bill allege that on March 31, 1887, William Trullinger purchased from Jacob Charles, a co-complainant in this proceeding, a tract of land situate in said county, containing fifty-two acres, and paid for the same the sum of $7,000, being the full amount of the purchase money.

At the time of said purchase a judgment for $1,344 had been entered by Sarah E. Charles, the defendant, against her husband, one John D. Charles, son of Jacob Charles ; said judgment being entered to No. 308 April Term 1886, on March 18, 1886.

Having heard a rumor that the said John D. Charles had an interest of some kind in the land he was about to purchase, the complainant, William Trullinger, inquired of the vendor and was assured by him, that the said John D. Charles had no interest in the same, and that the judgment aforesaid was not an incumbrance on the land ; and he therefore, as before stated, paid over the whole purchase money and took his deed.

These are facts not controverted by the respondent. It further appears and the master finds as facts that on December 31, 1884, Jacob Charles and Mary E., his wife, by deed of conveyance granted and conveyed to their son John D. Charles the tract of land before mentioned for and in consideration of the sum of $6,000, which was paid in the following manner, viz. : said John D. Charles gave his father a promissory note for $3,500, and surrendered to him a note of $300 which he held against his father, and assumed the payment of a mortgage of about $2,000, held by a Mrs. Fisher as a lien upon said land, with some interest due on the mortgage. John D. Charles made some effort the following April to raise $4,000 on a mortgage which he proposed to create as a lien upon said farm, and with the proceeds of which mortgage he intended to lift the Fisher mortgage and to pay on account of the $3,500 note which his father held against him; in this effort to raise money he failed, although his father had actively assisted him.

Master's Report.

John D. Charles and his family were occupying the premises at the time he bought the farm, having taken possession as tenants of the father, and they remained in possession after the purchase. On March 30, 1886, not having paid anything to the vendor, except as before mentioned, the said John D. Charles and his wife, the respondent, conveyed said farm to Mary E. Charles, and he, the said John, got his $3,500 note back again and also received the $300 for which he had held a note against his father. Prior to said conveyance of March 30, 1886, by John D. Charles and wife to Mary E. Charles, to wit: on March 18, 1886, said judgment for $1,344 was entered. by Sarah E. Charles against John D. Charles upon a note dated April 2, 1883.

[At the time of the sale of this farm to John D. Charles by his father, there was something said about a reconveyance in case John could not pay; but it is evident from all the testimony in the case that there were no binding conditions of that kind attached to the sale, and that the conveyance by John and his wife Sarah, respondent, to John's mother, was not made in pursuance of any agreement so to convey.] [2]

[John D. Charles and his wife never regarded this sale to John as other than an absolute one, and the weight of the evidence is to the effect that Sarah never heard any talk about a reconveyance until a short time before she signed the deed to Mary E. Charles.] [3]

It is clear also that the idea in Jacob Charles's mind that the sale was a conditional one is an afterthought, else why should he try to induce William Enders to loan John $4,000 in April, 1885, upon his, John's, title to this farm, and he, Jacob, was to get only about $1,500 of that money as payment of his note, for the balance was required to satisfy the Fisher mortgage.

It certainly cannot be said under the facts in this case, that John D. Charles never paid any part of the purchase money. True, upon conveyance to his mother there was returned to him whatever he had paid, but at the time of the entering of the wife's judgment against him he had a title to and interest in the farm to which the lien of her judgment attached, just as the Ender's mortgage would have done if the project of John and Jacob Charles had been carried out in 1885.

[If the master has come to proper conclusions as to the facts of this case, there certainly was no fraud either actual or legal in the respondent's causing an execution to be issued, and in directing that a levy be made upon the real estate which her husband owned at the time she entered her judgment.] [4] If there is fraud in any part of these transactions, it is a fraud inflicted upon Trullinger by Jacob Charles, in asserting that John D. Charles had no interest in the land; that said judgment was not an incumbrance, and in pretending to be able to convey in the face of said judgment, a title to said Trullinger clear of incumbrances, as Charles and his wife undertook to do by their deed of March 31, 1887, which contained a general warranty and in which they grant, bargain and sell the real estate in question.

The master is of the opinion that, upon the facts of this case, these proceedings should be dismissed at the cost of the complainants, and that the respondent should be permitted to proceed with the collection of the balance due upon her judgment.

To the foregoing report the plaintiffs filed exceptions, alleging that the master erred, inter alia:

2–4. In his findings and conclusions in [ ] [2 to 4]

5. In recommending the dismissal of the bill.

Said exceptions having been argued, the court, SIMONTON, P. J., filed the following opinion and decree:

The master finds that at the time of the sale of the farm to John D. Charles by his father, there was something said about a reconveyance in case he could not pay the purchase money, but that there were no binding conditions of this kind attached to the sale, and that the reconveyance was not made in pursuance of any agreement so to do.

The counsel for complainant concedes, as we understand, that the finding of facts of a master is entitled to the same weight as the verdict of a jury, but he contends that this finding if made by a jury on the same evidence would be properly set aside by the granting of a new trial, and he asks us on this principle to reverse it. After a very careful examination of the evidence we have come to the conclusion that we cannot do so. The evidence consists, substantially, of the testimony of Jacob

Charles and his wife, that there was such an agreement, and of John D. Charles and his wife, that there was not. The only testimony given by William Trullinger on the subject relates to certain admissions which he testified John D. Charles had made three weeks before the taking of the testimony. Each of these witnesses was interested, and each testified in favor of the interest represented by them respectively. The transaction on the face of the papers purported an absolute sale by Jacob to John. The deed was executed, delivered, and recorded; and a note was taken for the balance of the purchase money not paid, or secured by the Fisher mortgage. There is nothing to show that Jacob and his wife are any more worthy of credit than John and his wife. Trullinger testifies to statements made by John three weeks before the hearing, which are inconsistent with John's sworn testimony, but he also testifies that Jacob did not give him the correct version of the facts, when he asked him about the judgment on record against John. In this state of the evidence we could not say with any confidence that the master erred in his conclusion, nor would we set the finding aside if it were the result of a verdict by a jury.

It is probable, as suggested by the master, that at or after the time the conveyance was made to John, there was some talk of his reconveying in case he could not pay. But the testimony does not convince us that this talk ever amounted in form or substance to an agreement which, even in the absence of the statute of frauds, could have been enforced. And there is no evidence whatever that Sarah E. Charles, the defendant, John's wife, ever agreed to join in a conveyance, and she could not in any event have been compelled to do so. Jacob might have withheld the conveyance to John until the purchase money was paid, and on failure to pay, either from want of disposition or ability, have refused altogether to convey; but he did not choose to do so. He made the conveyance and gave credit for the balance of the purchase money not paid or secured, and thus made it possible for Sarah to obtain a lien on the land; and he now asks the court to do for him what he declined or omitted to do for himself. In view of the master's finding, which we do not feel at liberty to disturb, we do not think we can afford him any relief.

We cannot say as a conclusion of law that Sarah by joining

with her husband in the reconveyance discharged the land from the lien of her judgment. She certainly did not intend to do so, and our attention has not been called to any clause in the deed which is claimed to have that effect.

It cannot be said that John took no interest in the land by the conveyance made to him by Jacob. He paid $300 of the purchase money, by the surrender of the note for that amount which he held against Jacob. This being so, even if Jacob had retained the legal title as security for the purchase money, or had taken from John a written agreement to re-convey on failure to pay the balance, John would have had an interest in the land which would have been subject to a judgment lien and sale on execution, and the purchaser at such sale, certainly, if made before reconveyance, would have stood in John's shoes, and have been entitled to a conveyance on payment of the balance of the purchase money; or, to have the amount paid refunded on making a reconveyance. And we are unable to see how the rights of the judgment creditor, vested by the entering up of the judgment could be prejudiced by a reconveyance of the land bound by the lien of the judgment, because it was made before execution was issued. Nor do we think that the judgment creditor is in any worse position because she is John's wife, holding a judgment against him for an honest debt, than if she were a stranger. She had the same right to levy on his interest in the land that a stranger would have had.

In our opinion the plaintiffs are misled into the belief that they have a right to equitable relief, by the fact that Jacob took no security from John for the unpaid purchase money. If he had, for example, taken a valid written contract to reconvey, it would be seen at once that a judgment creditor, whether his wife or a stranger, could levy on his interest in the land, subject to this agreement, and that the purchaser at sheriff's sale would take his place under it. The fact that no such valid contract was made, does not destroy the right to levy and sell; it simply leaves the purchaser unbound, because John, whose rights the purchaser takes, was not bound. Any evil consequence to Jacob results from his own failure to make himself secure when he could have done so.

It was said by Chief Justice GIBSON, in Kauffelt v. Bower, 7 S. & R. 77, that, "it is inconsistent with natural justice, that a

vendor who publishes to the world by the terms of his deed, that he has parted with his whole interest, and has trusted to the personal security of the vendee, should become an object of special protection against the conseqences of his own negligence; and that, too, at the expense of a third person, who, in purchasing from the vendee, even with notice that the purchase money was unpaid, has been guilty of nothing positively immoral or even unconscionable." We see no reason why this will not apply as well to the case of a judgment creditor as a purchaser, and we are of the opinion that the plaintiffs have no equity which would justify a decree in their favor. The injunction is therefore refused, and the bill dismissed, the costs to be paid by plaintiffs.

A final decree having been entered refusing the injunction and dismissing the plaintiffs' bill, the plaintiffs took this appeal filing the following assignments of error:

" 1. The court erred in sustaining the report of the master upon the facts of the case, his finding being against the weight of the evidence.

" 2. The court erred in holding that the defendant, by joining in the deed of reconveyance to Mary E. Charles,* did not discharge the land from the lien of her judgment against her husband. ·

" 3. The court erred in refusing the injunction and dismissing the bill."

*Mr. H. M. Graydon,* for the appellants:

(1) That a master's report, like the verdict of a jury, may be set aside when clearly against the weight of the evidence, counsel cited: Packer v. Noble, 103 Pa. 188.   (2) That a court of equity may restrain a party, in a case like this, from proceeding to sell land: Dent v. Ross, 35 Pa. 337; Harrison v. Soles, 6 Pa. 393; Winch's App., 61 Pa. 424; Taylor's App., 93 Pa. 21; Gray v. Bell, 4 W. 410; Witmer's App., 45 Pa. 455; Big Mountain Imp. Co.'s App., 54 Pa. 361; Given's App., 121 Pa. 260; but distinguishing Reeser v. Johnson, 76 Pa. 313; Davis v. Michener, 106 Pa. 395.   (3) That the defendant by joining

---

* This deed did not appear in the paper books.

in the deed of reconveyance discharged the land from the judgment: Funk v. Voneida, 11 S. & R. 109; Chambers v. Spencer, 5 W. 404; Hatz's App., 40 Pa. 209; Klein v. Caldwell, 91 Pa. 140; Scheid v. Rapp, 121 Pa. 593; Miner's App., 61 Pa. 283; Thomas v. Harris, 43 Pa. 231.

*Mr. David Mumma* and *Mr. J. H. Shopp*, for the appellee:

Upon the last assignment of error, counsel cited: Waters's App., 35 Pa. 523; Chambers v. Spencer, 5 W. 406; Dean v. Shelly, 57 Pa. 426; McAninch v. Laughlin, 13 Pa. 371; Crest v. Jack, 3 W. 238; Carr v. Wallace, 7 W. 394; Hill v. Epley, 31 Pa. 333; Glidden v. Strupler, 52 Pa. 400; Innis v. Templeton, 95 Pa. 262; Wagner's App., 98 Pa. 77; Knepper v. Kurtz, 58 Pa. 480.

PER CURIAM:

Assuming that the master has found the facts correctly the decree of the court below follows logically. The first assignment alleges that " The court erred in sustaining the report of the master upon the facts of the case, his finding being against the weight of the evidence." This assignment is so general that it is of no practical use. It designates no particular fact in the findings in which the master has erred. Moreover, it merely alleges that his findings are " against the weight of the evidence." This is an admission that there was a conflict of evidence. In such cases we do not weigh it. That is for the master, who heard the witnesses and has the means of judging of their credibility, and for the court below, who is one step nearer the witnesses than we are. We would be treading upon dangerous ground to overrule the master upon a question of the weight of the evidence, sustained as he is by the court below. We cannot say, as a legal proposition, that the defendant, by joining in the deed of conveyance to Mary E. Charles, discharged the land from the lien of her judgment. The deed is not printed in the paper books, but the fact is found by the master that the deed of conveyance from Jacob Charles and wife to William Trullinger contains a general warranty of title, and the usual covenant against incumbrances, in the words " grant, bargain and sell." It does not appear what covenants were contained in the deed executed by the

defendant and her husband to Mary E. Charles. We need not speculate, therefore, as to how far a married woman who joins in a conveyance of her husband's real estate is bound by the covenants in the deed.

The decree is affirmed and the appeal dismissed at the costs of the appellant.

